UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES ALEXANDER LOGAN,

        Plaintiff,

v.                                 Case No. 3:17-cv-765-J-39PDB

T. A. SPREADLY,[1]

        Defendant.

_____

**<u>ORDER</u>**

**I. Status**

Plaintiff, James Alexander Logan, an inmate of the Florida Department of Corrections, is proceeding pro se on a civil rights complaint (Doc. 1; Compl.) against Defendant Sergeant T. Spradley. Plaintiff alleges Defendant Spradley was deliberately indifferent to his safety when Spradley saw his cellmate attack him on December 15, 2016, and failed to intervene. <u>See</u> Compl. at 9, 13.[2] Before the Court is Defendant's motion for summary judgment (Doc. 72;

---

[1] In his complaint, Plaintiff spells Defendant's last name as "Spreadly," which is the spelling reflected on the Court's docket. As is evident from Defendant's filings (Docs. 72, 72-1), his last name is spelled "Spradley." The Court will direct the Clerk to update the docket accordingly.

[2] Plaintiff's allegations are fully summarized in this Court's order on Defendants' motions to dismiss. <u>See</u> Order (Doc. 63). Plaintiff's claims against the other Defendants have been dismissed. <u>Id.</u>

Motion), which Plaintiff opposes (Docs. 78, 79; Pl. Resp.) (Docs. 78-1, 78-2; Pl. Ex.).[3]

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically

---

[3] On different dates, Plaintiff submitted duplicate copies of his response with an exhibit.

stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).

On summary judgment, a party opposing the motion must point to evidence in the record to demonstrate a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

3

### III. Defendant's Motion

Defendant Spradley argues the evidence shows the absence of a genuine issue of material fact regarding whether he was deliberately indifferent to Plaintiff's request for protection (under a failure-to-protect theory) or whether he failed to intervene during the attack (under a failure-to-intervene theory). See Motion at 8, 10-11. Additionally, Defendant Spradley maintains Plaintiff's request for compensatory and punitive damages must be dismissed because he suffered only de minimis injuries. Id. at 13-14. Finally, Defendant Spradley invokes qualified immunity. Id. at 15.

Defendant Spradley does not dispute Plaintiff was injured on December 15, 2016. See Motion at 3. However, Defendant disputes all other pertinent allegations, including that Plaintiff was attacked by his cellmate, Inmate Banks.[4] In his declaration (Doc. 72-1; Def. Ex. A), Defendant Spradley avers the facts relayed by Plaintiff "are not true." Def. Ex. A ¶ 3. In stark contrast to Plaintiff's version of events, Defendant Spradley says the following transpired on December 15, 2016:

> I was on quad 4 of F dormitory cell front F4208, where Inmate Logan . . . and Inmate Banks . . . were housed. Inmate Banks and Inmate Logan both told me they had issues and could no longer be housed together. In

---

[4] Plaintiff spells the inmate's last name as "Bank." See Compl. at 11; Resp. at 2. According to prison documents, the inmate's last name is spelled "Banks." Def. Ex. B at 1.

4

> response, I ordered both [i]nmates to submit
> to hand restraints to be reassigned to a new
> housing location. I restrained both inmates
> and removed Inmate Logan from the cell with
> Inmate Banks and placed him in the holding
> cell. Inmate Banks remained in the housing
> cell. At this time, Inmate, [sic] Logan had no
> visible injuries. Approximately 30 minutes
> later, I returned to the holding cell and
> Inmate Logan had spots of blood on his chest,
> nose, left middle-finger, and he was
> complaining of his knee hurting. Inmate Logan
> then made an allegation that Inmate Banks
> assaulted him. Inmate Logan was seen by
> medical with 2 1cm superficial lacerations to
> his left knee, 1 cm laceration to his upper
> left chest, 3cm laceration to his middle left
> middle [sic] finger, and the bridge of his
> nose was swollen. . . . [A]t no time during
> this incident did I see the inmates exchanging
> blows or fighting.

Id. Defendant Spradley wrote an incident report on December 15, 2016, relaying the facts as stated in his declaration (Doc. 72-2; Def. Ex. B). The shift supervisor noted there were no witnesses to the incident and Inmate Banks was "a confirmed member of the security threat group known as 'Gorilla Stone Ganstas.'" Def. Ex. B at 1. The supervisor forwarded the incident report to the Office of the Inspector General (IG) and placed Plaintiff on protective management pending a review by the ICT (Institution Classification Team). Id. A nurse evaluated Plaintiff, recorded his injuries, and cleansed his lacerations. Id. at 2-3, 6.

Plaintiff submitted an emergency grievance on December 19, 2016, reporting that Defendant Spradley ignored Inmate Banks's initial attack (a punch) and allowed another gang-member inmate to

5

slide a knife under their shared-cell door to Inmate Banks (Doc. 72-3; Def. Ex. C). Plaintiff expressly requested video footage be retained pursuant to section 33-602.033 of the Florida Administrative Code. Def. Ex. C at 3, 4. The Warden's office approved Plaintiff's grievance and referred his complaint to the IG's office for "appropriate action." Id. at 2. The response did not address Plaintiff's request to preserve video evidence.

### IV. Analysis & Conclusions

In his complaint, Plaintiff alleges Defendant Spradley was deliberately indifferent to Plaintiff's safety for Spradley's failure to protect Plaintiff and his failure to intervene when Plaintiff's cellmate attacked him. See Compl. at 9, 17. In his response, Plaintiff clarifies that he does not proceed under a failure-to-protect theory but under a deliberate-indifference theory. In fact, Plaintiff asserts he did not tell Defendant Spradley he and Inmate Banks had issues, and he disputes that Defendant Spradley moved him to a holding cell to separate the two inmates. See Pl. Resp. at 5, 7; Pl. Ex. at 2-3.

#### A. Eighth Amendment Claim & Qualified Immunity

In his verified complaint,[5] Plaintiff asserts Defendant Spradley saw Inmate Banks punch Plaintiff and then walked away

---

[5] The factual assertions a plaintiff makes in a verified complaint satisfy "Rule 56's requirements for affidavits and sworn declarations," and are therefore given the same weight as factual

from the cell where the two inmates were housed together. Compl. at 11. Plaintiff also alleges Defendant Spradley heard Inmate Banks request a knife from another gang member, Inmate Harris. Id. at 11-12. Plaintiff does not make clear in his complaint whether Defendant Spradley permitted Inmate Harris to pass the knife to Inmate Banks or whether he witnessed the act. See id. However, in his affidavit, which he provides with his response to Defendant's motion, Plaintiff clarifies that Defendant Spradley "was present" when Inmate Harris slid the knife to Inmate Banks. Pl. Ex. at 4.

Defendant Spradley denies having seen the cellmates fighting and maintains he separated the inmates before Plaintiff sustained his injuries. Def. Ex. A ¶ 3. And, he argues, Plaintiff's "speculation about what [he] saw" is not enough to withstand summary judgment. Motion at 11. Defendant Spradley also says Plaintiff's grievance conflicts with the allegations in his complaint, and Spradley faults Plaintiff for using imprecise terminology in his complaint. For instance, Defendant Spradley notes Plaintiff alleges in his complaint that he asked Spradley to "roll the door" when Inmate Banks started punching him, but Plaintiff did not assert as much in his grievance written days after the incident. Id. at 18. Additionally, Spradley says Plaintiff's claim should be dismissed because he does not overtly

_____

statements made in an affidavit. Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014).

say that Inmate Banks "took the knife and stabbed [Plaintiff]." Id. at 18-19. Rather, Defendant points out, Plaintiff alleges another gang member, Inmate Harris, slid a knife under "[Plaintiff's] cell door" and he was stabbed. Compl. at 12 (emphasis added).

As Defendant's attorney surely is aware, this Court must liberally construe Plaintiff's pro se pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). And the Court must credit Plaintiff's sworn allegations. See Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019) ("[S]tatements in [a plaintiff's] verified complaint, sworn response to [a] motion for summary judgment, and sworn affidavit attached to that response should [be] treated as testimony by the district court."). While Plaintiff's filings are not sophisticated, precise, or grammatically perfect, his allegations are clear and consistent: he alleges Defendant Spradley walked away when Inmate Banks started punching him inside their shared cell, and Defendant Spradley actively or passively permitted another inmate, a known gang member, to pass a knife to Inmate Banks, which Inmate Banks then used to stab Plaintiff. Plaintiff uses the imprecise passive voice ("was stabbed"), but reading this allegation in context, it is apparent Plaintiff alleges Inmate Banks stabbed him using the knife Inmate Harris provided to him. Additionally, Plaintiff clarifies in his

affidavit that "Inmate Harris slid[] the knife to his blood gang member brother Bank[s]." Pl Ex. at 4.

That Defendant Spradley denies Plaintiff's allegations does not permit the Court to discredit Plaintiff's version of events. When two parties' stories conflict, neither of which is blatantly contradicted by indisputable evidence, a district court may not make credibility determinations in favor of one party over the other.[6] See Sears, 922 F.3d at 1208 (holding summary judgment in favor of the corrections officers was not proper because each side's version of events was different, meaning there remained a genuine dispute of material fact). There is no indisputable evidence contradicting Plaintiff's story. What the parties submit to the Court is a quintessential "he-said, he-said," which precludes the entry of summary judgment. See id.

Accepting as true Plaintiff's assertions that Defendant Spradley watched Inmate Banks spontaneously and without provocation start punching Plaintiff but declined to intervene, and that Defendant Spradley was aware another gang-member inmate armed Inmate Banks with a knife, Plaintiff provides enough evidence to demonstrate a genuine issue of material fact whether Defendant Spradley was deliberately indifferent to a substantial risk of

---

[6] Additionally, Plaintiff cannot be penalized for lacking concrete, indisputable evidence given his timely request that video footage be preserved was not honored.

serious harm.[7] <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)
("[P]rison officials have a duty ... to protect prisoners from
violence at the hands of other prisoners."). And because this
constitutional right was clearly established at the time of the
incident, Defendant Spradley is not entitled to qualified
immunity.

## B. Injuries

Defendant Spradley asserts Plaintiff's request for
compensatory and punitive damages must be dismissed because
Plaintiff did not sustain a constitutional injury during the attack
on December 15, 2016. Motion at 12-13.

The Prison Litigation Reform Act (PLRA) requires that a
plaintiff seeking damages demonstrate the conduct he alleges
violated his constitutional rights caused a physical injury. 42
U.S.C. § 1997e(e) ("No Federal civil action may be brought by a
prisoner confined in a jail, prison, or other correctional
facility, for mental or emotional injury suffered while in custody
without a prior showing of physical injury.").

The PLRA does not define "physical injury," but the Eleventh
Circuit has explained a physical injury is one that is not simply

---

[7] Even if Defendant Spradley did not know Inmate Harris passed
a knife to Inmate Banks, Plaintiff alleges facts that, if true,
would permit a reasonable fact finder to conclude Spradley was
deliberately indifferent to Plaintiff's safety when he ignored
Inmate Banks's initial attack on Plaintiff.

de minimis, though it "need not be significant." Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) (per curiam) (citing Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999)). Bruising and scrapes fall into the category of de minimis injuries. Id. Accord Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding vague back injuries and scrapes amounted to de minimis injuries).

On the other hand, a prisoner need not demonstrate a permanent, long-lasting injury to satisfy the PLRA's "physical injury" requirement. Thompson v. Smith, 805 F. App'x 893, 903 (11th Cir. 2020). The Eleventh Circuit recently pronounced that, in accordance with Eighth Amendment jurisprudence, "routine discomfort[s] associated with confinement" are not the kinds of "injuries" for which compensatory and punitive damages are recoverable, but the PLRA "was not intended to allow only those prisoner-plaintiffs with severe physical injuries to recover [such] damages." Id. at 904. The court clarified that to constitute a "physical injury" under the PLRA, a prisoner's condition need not be so severe as to require "professional medical attention." Id. at 904. Rather, temporary injuries, such as the temporary effects of pepper spray, may satisfy the PLRA's standard. Id. at 904-05 (reversing the district court's grant of summary judgment as to damages because a reasonable trier of fact could conclude the prisoner-plaintiff suffered more than de minimis injuries from

11

being pepper sprayed sadistically and without penological justification).

Defendant Spradley argues Plaintiff provides no proof of a physical injury and implies Plaintiff's assertions are merely conclusory and "blatantly contradicted" by medical records. Motion at 13. Defendant's position is confusing given the exhibits he himself provides confirm Plaintiff sustained injuries on December 15, 2016, following an inmate altercation. Immediately after the incident, a nurse documented multiple lacerations and a swollen nose. See Def. Ex. B at 2, 6. The lacerations required cleaning and bandaging. Id. at 3. Additionally, according to post-incident medical records, Plaintiff reported left shoulder pain and received treatment for a suspected dislocated left shoulder, which he attributed to the December 15, 2016 incident. Def. Ex. D-3 at 3, 7, 8, 10, 12, 35. See also Pl. Ex. at 4. The prison doctor found Plaintiff's complaints serious enough to warrant an x-ray, and Plaintiff's shoulder was immobilized. Def. Ex. D-3 at 8. The x-ray results showed Plaintiff did not sustain a fracture and had no malalignment or dislocation at the time. Id. at 31, 32, 34.

The Court is not inclined to conclude as a matter of law that multiple lacerations, a nose injury, and a shoulder injury requiring an x-ray are de minimis injuries under the PLRA. While Plaintiff did not sustain broken bones or require stitches, he sustained more than scrapes and bruises. The evidence is enough to

12

permit a reasonable fact finder to conclude Plaintiff's injuries meet the "more-than-<u>de</u>-<u>mimimis</u>" threshold. Accordingly, Defendant Spradley fails to carry his burden on summary judgment, and Plaintiff's request for compensatory and punitive damages is not barred as a matter of law under the PLRA.

### V. Conclusion

For the reasons stated above, Defendant Spradley is not entitled to summary judgment. This case is in a posture to proceed to settlement conference and trial. As such, and because of the troubling, alleged spoliation-of-evidence issue the Court has addressed previously, <u>see</u> Orders (Docs. 69, 77), the Court finds Plaintiff is entitled to the appointment of counsel to assist him. <u>See</u> 28 U.S.C. § 1915(e)(1); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1320 (11th Cir. 1999). Therefore, the Court will refer this case to the Jacksonville Division Civil Pro Bono Appointment Program. If counsel is appointed to represent Plaintiff, the Court will afford counsel an opportunity to file a motion to reopen discovery for a limited period if counsel deems it necessary.

Accordingly, it is

**ORDERED:**

1.   Defendant's motion for summary judgment (Doc. 72) is **DENIED.**

2.   This case is **referred** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of

13

the Court may seek counsel to represent Plaintiff.

3.    The **Clerk** is directed to update the docket to reflect the correct spelling of Defendant Spradley's last name.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of July 2020.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
James Alexander Logan
Counsel of Record

14